**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHARLES McALLISTER,
a/k/a/ Charles McCallister,

                              Plaintiff,

            v.                                              No. 10-CV-610
                                                              (FJS/CFH)
HAROLD CALL, Vocational Supervisor,
Mohawk Correctional Facility,

                              Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Charles McAllister
Plaintiff Pro Se
279 Siegel Street
Westbury, New York 11590


HON. ERIC T. SCHNEIDERMAN          KEITH J. STARLIN, ESQ.
Attorney General for the                    Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

            Plaintiff <u>pro se</u> Charles McAllister ("McAllister), a former inmate who was, at all

relevant times, in the custody of the New York Department of Corrections and Community

_____

            [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

Supervision ("DOCCS"),[2] brings this action pursuant to 42 U.S.C. § 1983 alleging that

defendant Harold Call ("Call"), Vocational Supervisor, Mohawk Correctional Facility

("Mohawk"), violated his constitutional rights under the First, Eighth and Fourteenth

Amendments. Am. Compl. (Dkt. No. 64) ¶¶ 33, 34; 4. McAllister initially commenced this

civil rights action against defendants Brian Fischer, Lucien J. LeClaire, Patricia LeConey,

Carol Woughter, and John and Jane Does. Defendants moved for summary judgment.

Dkt. No. 49. By report and recommendation dated July 6, 2012, (1) all claims against

identified defendants were dismissed; and (2) defendant was directed to join Call, who was

identified in the motion papers as a John Doe defendant. Dkt. No. 55; Dkt. No. 58. The

report and recommendation was accepted in its entirety, and McAllister was directed to file

an amended complaint to "include only one cause of action – a procedural due process

claim in connection with his disciplinary hearing – and one Defendant – hearing officer Call."

Dkt. No. 58 at 4. McAllister thereafter filed his amended complaint wherein he requested

punitive and compensatory damages. Am. Compl. at 4. Presently pending is Call's motion

for summary judgment on the amended complaint pursuant to Fed. R. Civ. P. 56. Dkt. No.

74. McAllister did not respond. For the following reasons, it is recommended that Call's

motion be granted in part and denied in part.

## I. Failure to Respond

The Court notified McAllister of the response deadline and extended the deadline for

his opposition papers on two occasions. Dkt. No. 75; Dkt. No. 77; Dkt. No. 80. Call also

provided notice of the consequence of failing to respond to the motion for summary

---

[2] McAllister is no longer incarcerated and is currently under the supervision of DOCCS.

judgment in his motion papers. Dkt. No. 74-1. Despite these notices and extensions, McAllister did not respond.

Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Thus, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Id. at 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56 (c). "A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (internal citations omitted); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (same). The facts set forth in defendant's Rule 7.1 Statement of Material Facts (Dkt. No. 74-2) are accepted as true as to those facts that are not disputed in McAllister's amended complaint. N.D.N.Y.L.R. 7.1 (a) (3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.").


## II. Background

The facts are reviewed in the light most favorable to McAllister as the non-moving party. See subsection III (A) infra. At all relevant times, McAllister was an inmate at Mohawk. Am. Compl. ¶ 3.

On or about July 15, 2009, nonparty Correction Officer Femia, pursuant to authorization from nonparty Captain Dauphin, searched McAllister's personal property while McAllister

was confined in a secure housing unit ("SHU").[3]  Dkt. No. 74-3, Exh. A, at 14; Am. Compl.

¶¶ 5-6.  Femia confiscated approximately twenty documents from McAllister's locker,

including five affidavits that were signed by other inmates.  Dkt. No. 74-3, Exh. A, at 14.  As

a result of the search, Femia issued McAllister a Tier III misbehavior report, alleging

violations of prison rules 113.15[4] (unauthorized exchange) and 180.17 (unauthorized

assistance).[5]  Id.; Am. Compl. ¶ 7.

McAllister was assigned as his inmate assistant nonparty Correction Officer A. Sullivan.

Am. Compl. ¶ 7; Dkt. No. 74-3, Exh. A, at 11.  McAllister requested five inmate witnesses,

documents, prison directives 4933 and 4982, and a facility rule book.  Am. Compl. ¶ 8; Dkt.

No. 74-3, Exh. A, at 11.  He also asked Sullivan for permission to retrieve documents from

his personal property.  Id.  The requested witnesses were those inmates whose signatures

were affixed to the five confiscated affidavits.  Dkt. No. 74-3, Exh. A, at 14.  Sullivan

retrieved the requested materials, and all inmate witnesses agreed to testify.  Id. at 11.

On or about July 21, 2009, a Tier III disciplinary hearing was held before Call, who

served as the hearing officer.  Am. Compl. ¶ 10.  McAllister pleaded not guilty to both

alleged violations.  Dkt. No. 74-3, Exh. A, at 38.  McAllister objected to the misbehavior

---

[3]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b) (1999).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[4]  Rule 113.15 provides that "[a]n inmate shall not purchase, sell, loan, give or exchange a personally owned article without authorization."  7 NYCRR 270.2.

[5]  Rule 180.17 provides that "[a]n inmate may not provide legal assistance to another inmate without prior approval of the superintendent or designee.  An inmate shall not receive any form of compensation for providing legal assistance."  7 NYCRR 270.2.

report as violative of prison directive 4932 because the copy he was given (1) provided insufficient notice of the charges against him and (2) differed from the report that Call read into the record. Id. at 39-41. McAllister stated that his copy did not list the names of the inmates to whom the confiscated affidavits allegedly belonged. Id. Call acknowledged the difference between the reports but concluded that the misbehavior report informed McAllister of the charges against him and the bases for the charges. Id. at 39, 41-42. McAllister also argued that his copy of the misbehavior report referred to confiscation of twenty documents from his cell, but did not identify the papers that were taken. Id. at 42. He contended that the misbehavior report's general reference to "legal work" was insufficient to provide him with notice of the documents to which the report was referring because he had several volumes of legal work. Id. at 42, 59. In response to this objection, Call recited the body of the misbehavior report, which described the confiscated documents as "[a]rticles of paper which appear to be legal work including some signed affidavits" and asked McAllister, "[t]hat didn't ring a bell for you? How much paperwork did you have that fit that description?" Id. at 42. Call also expressed his belief that the affidavits qualified as legal work. Id. at 45, 57-58.

    McAllister next argued that he did not provide unauthorized legal assistance to another inmate in violation of rule 180.17 because the inmate affidavits were used as evidence to prove that the Division of Parole had a "practice" of "fail[ing] to respond to appeals over the last four years . . . ." Dkt. No. 74-3, Exh. A at 45-49, 56. These inmates were aware that their affidavits were created for, and to be used solely in support of, McAllister's case and that they were receiving no legal benefit. Id. at 48-49. McAllister further contended that he did not need permission from prison personnel to collect the affidavits. Id. at 64.

McAllister also argued that rule 113.15 is ambiguous because it does not list the specific items which, if found in an inmate's possession, would violate the rule. Dkt. No. 74-3, Exh. A, at 54. Finally, to the extent it can be determined from the hearing transcript, McAllister objected to the SHU procedures for handling his personal property. Id. at 70.

At the conclusion of the hearing, Call informed McAllister that he would be considering testimony from a confidential witness. Dkt. No. 73-3, Exh. A, at 13, 38, 73. McAllister objected to consideration of confidential testimony without being informed of the contents. Id. at 74. Finally, McAllister declined to call the inmates that he had requested as witnesses. Id. at 37, 71.

Call found McAllister guilty of violating prison rules 113.15 and 180.17. Dkt. No. 74-3, Exh. A, at 8-9, 76. He imposed a penalty of three months in SHU and three months loss of privileges. Id. at 8. Call relied upon the misbehavior report, the confidential testimony, the packet of legal work containing the other inmates' affidavits, and McAllister's testimony and statements. Id. at 9.

The disciplinary determination was reversed upon administrative appeal on the ground that the evidence failed to support a finding of guilt. Dkt. No. 74-3, Exh. B, at 79; Exh. C, at 81. In May 2010, McAllister commenced this action pursuant to 42 U.S.C. § 1983.

### III. Discussion[6]

McAllister argues that Call violated his rights under (1) the First Amendment, by (a) retaliating against him by finding him guilty and (b) hindering his access to the courts;

---

[6] All unpublished decisions referenced herein are appended to this report and recommendation.

(2) the Eighth Amendment, by imposing a three-month SHU assignment, plus ten additional days following reversal of the disciplinary hearing; and (3) the Fourteenth Amendment, because (a) he was given insufficient notice of the charges against him, (b) he was denied advance notice of the use of a confidential witness, (c) he was forced to spend approximately fifty-two days in SHU as a result of the misbehavior report, (d) Call failed to follow certain DOCCS directives and prison regulations, (e) Call demonstrated bias against him during the Tier III hearing and prejudged his guilt, and (f) he was denied equal protection.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be

7

apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v.

Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994);

Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Triestman v. Federal Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions must
> be construed "liberally,". . . and that such submissions must be read to
> raise the strongest arguments that they "suggest," . . . .  At the same time,
> our cases have also indicated that we cannot read into pro se submissions
> claims that are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," . . . that we
> should not "excuse frivolous or vexatious filings by pro se litigants," . . . and
> that pro se status "does not exempt a party from compliance with relevant
> rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191–92 (2d Cir. 2008).

## B. Eleventh Amendment

Call argues that he is entitled to Eleventh Amendment immunity relating to McAllister's

claims for money damages against him in his official capacity.  The Eleventh Amendment

provides that "[t]he Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST.

AMEND. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot]

entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. &

Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21

(1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  <u>Halderman</u>, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  <u>Farid v. Smith</u>, 850 F.2d 917, 921 (2d Cir. 1988) (citing <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Here, because McAllister seeks monetary damages against Call for acts occurring within the scope of his duties, the Eleventh Amendment bar applies.

Accordingly, it is recommended that Call's motion on this ground be granted.


### C.  Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered personally involved if:

(1) [T]he defendant participated directly in the alleged constitutional violation;
(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873 (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).[7]

Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact.  See e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

As to any constitutional claims beyond those surrounding the denial of due process at the Tier III hearing, the undersigned notes that evaluation of such is unnecessary as it is outside of the scope set forth in this Court's prior order.  Dkt. No. 58 at 4.  However, to the extent that Call acknowledges these claims and provides additional and alternative avenues for dismissal, McAllister fails to sufficiently allege Call's personal involvement in impeding his access to the courts, in violation of the First Amendment.  McAllister argues that, as a result of Call's determination that he violated rules 113.15 and 180.17, his legal paperwork was confiscated, which impaired his ability to continue to represent himself in pending state

---

[7]  Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

and federal court claims.  Am. Compl. ¶¶ 38-40.  However, McAllister does not suggest that Call was personally involved in either the search and confiscation of paperwork that led to the filing of the misbehavior report nor the subsequent reduction in his paperwork pursuant to directive 4913.   To the contrary, McAllister concedes that the paperwork was reduced pursuant to the directive.

McAllister also fails to sufficiently allege Call's personal involvement in the SHU procedures for storing property or in holding him in SHU for ten additional days following the reversal of the Tier III determination.  Call stated that hr had no involvment with the storage of property in SHU.  Dkt. No. 74-3, at 5.  Call also contended that he "was not responsible for plaintiff's being held in SHU for additional days following the August 26, 2009 reversal of the disciplinary hearing decision of July 22, 2009."  Id.  McAllister does not allege Call's involvement in this delay.  McAllister's sole reference to the ten-day delay is his claim that he "was not released from Special Housing until September 4, 2009, approximately 10 days after the reversal" Am. Compl. ¶ 43.  This conclusory statement is insufficient to demonstrate Call's personal involvement in an extension of his time in SHU following the reversal of the Tier III determination.  Brown, 647 F. Supp. 2d at 200.

Accordingly, it is recommended that Call's motion be granted insofar as McAllister alleges that Call: denied him access to the courts in violation of the First Amendment, was at all involved with the storage of his property while he was in SHU, and caused him to be held an additional ten days in SHU following administrative reversal of the Tier III determination.

### D. First Amendment

McAllister appears to argue that, in retaliation for his filing of grievances and lawsuits,

Call found him guilty of the misconduct in the Tier III hearing and imposed SHU time. He suggests that his transfer to SHU, as a result of the Tier III determination, triggered enforcement of his compliance with directive 4913, which impeded his ability to proceed with active legal matters and resulted in dismissals. Am. Compl. ¶ 41. Thus, McAllister also argues that he was denied access to the courts. Am. Compl. ¶ 38. As a preliminary matter, McAllister's First Amendment retaliation and access claims are beyond the scope of the prior order of this Court directing McAllister to limit his amended complaint "include only one cause of action – a procedural due process claim in connection with his disciplinary hearing." Dkt. No. 58, at 4. Regardless, McAllister fails to plausibly allege either retaliation or denial of access to the courts.

Courts are to "approach [First Amendment] retaliation claims by prisoners with skepticism and particular care." See e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. Ashcroft, 556 U.S. at 678; South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009). To survive a motion to dismiss, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Taylor v. Fischer, 841 F.Supp.2d 734, 737 (W.D.N.Y. 2012). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that

12

they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." See Barclay v. New York, 477 F.Supp. 2d 546, 588 (N.D.N.Y. 2007).

Here, McAllister baldly states that Call's disciplinary determination was imposed in retaliation for his filing of grievances and lawsuits; however, McAllister does not identify these grievances and lawsuits nor does he claim that any of these were lodged against Call. See generally Ciaprazi v. Goord, No. 02-CV-915, 2005 WL 3531464, at *9 (N.D.N.Y. Dec. 22, 2005) (dismissing the plaintiff's claim of retaliation where the plaintiff could "point to no complaints lodged by him against or implicating the conduct of [the] defendant . . . who issued the disputed misbehavior report."). McAllister also provides no time frame for the apparent grievance and lawsuits. Thus, it cannot be discerned whether or how these unnamed grievances and lawsuits were a "motivating factor" in Call's Tier III determination. Doyle, 429 U.S. at 287 (internal quotation marks and citation omitted). McAllister's unsupported, conclusory claim fails to plausibly demonstrate that Call's determination was a product of retaliatory animus.

Undoubtedly, prisoners have a constitutional right to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 824 (1977); Lewis v. Casey, 518 U.S. 343, 350 (1996) ("The right that Bounds acknowledged was the (already well-established) right of access to the courts."). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents[] or file them." Lewis, 518 U.S. at 350 (internal

citations omitted). To establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Second, the plaintiff must demonstrate that he suffered an actual injury. Id.; Monsky v. Moraghan, 123 F.3d 243, 247 (2d Cir. 1997) (internal citations, quotation marks, and alterations omitted) (quoting Lewis, 518 U.S. at 329) ("In order to establish a violation of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.*, took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim"). Thus, a plaintiff must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." Davis, 320 F.3d at 351 (internal quotation marks omitted).

Here, there is insufficient evidence to give rise to a genuine dispute of fact regarding either element of a denial of court access claim. As noted, McAllister merely states that, as a result of the property reduction pursuant to directive 4913, his "ability to continue litigation in Federal and State court caused adverse decisions by the court and dismissals." Am. Compl. ¶ 41. This claim is insufficient to demonstrate that Call was responsible for actions that hindered his legal claims. Insofar as McAllister's claim could be read to suggest that Call denied him access to the courts by confiscating his legal documents, as noted supra, McAllister fails to present any plausible facts to support a finding that Call was involved in the initial search of his property or in the later reduction of his property or that it was maliciously imposed by Call. As noted, the initial cell search which led to the misbehavior report was ordered by Captain Dauphin and executed by Correction Officer Femia. Similarly, McAllister concedes that his property was reduced pursuant to directive 4913. Although McAllister suggests that his transfer to SHU as a result of the Tier III hearing

14

triggered the application of directive 4913, he was transferred to SHU on July 9, six days before the initial cell search occurred. Id. ¶ 5. Thus, if McAllister were forced to comply with directive 4913 because of his transfer to SHU, he failed to demonstrate that the compliance arose from the SHU term ordered by Call rather than the unknown incident that resulted in his transfer to SHU on July 9. Further, McAllister failed to establish any actual injury because he did not specify which cases were allegedly dismissed as a result of the property reduction. See Monsky, 123 F.3d at 247.

Accordingly, it is recommended that Call's motion for summary judgment be granted on this ground.

## E. Eighth Amendment

In his amended complaint, McAllister references the Eighth Amendment. Am. Compl. ¶ 31. However, McAllister's only reference to the Eighth Amendment is his assertion that Call's use of a confidential witness violated his Eighth Amendment right to be free from cruel and unusual punishment. However, in support of this argument, McAllister states only that this right was violated when Call stated, "[s]o, um there is a lot of stuff going on through my paperwork and I want to bring it to your attention before we move on . . ." Id. ¶ 33; Dkt. No. 74-3, at 73. When read in context, it becomes clear that Call made this statement immediately before informing McAllister of his consideration of confidential information. Dkt. No. 73-3, at 73. Although, in referencing this portion of the hearing transcript McAllister alleges that he was subject to cruel and unusual punishment, it appears that McAllister intended to assert that the use of a confidential witness was a due process violation. Even if McAllister had intended to argue that use of a confidential witness violates the prohibition

of cruel and unusual punishment, such a claim would necessarily fail because the Eighth Amendment protects an inmate's right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 & 837 (1994).  As McAllister makes no claim that he faced conditions of confinement imposing a risk to his health or safety and instead focuses his argument on notice of a confidential witness, giving McAllister due solicitude, his claim regarding the use of a confidential witness will be incorporated as part of the due process analysis below.

F.  **Fourteenth Amendment**

1. **Due Process**

Well-settled law provides that inmates retain due process rights in prison disciplinary hearings."  Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003) (per curiam) (citing cases). However,  inmates do not enjoy "the full panoply of rights" accorded to a defendant in a criminal prosecution.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  For a plaintiff to state a claim that he was denied due process at a disciplinary hearing, the plaintiff "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (per curiam) (quoting Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)).  To satisfy the first prong, a plaintiff must demonstrate that the deprivation of which he complains is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

16

### a. **Denial of Liberty Interest**

In assessing whether an inmate plaintiff was denied procedural due process, the court must first decide whether the plaintiff has a protected liberty interest in freedom from SHU confinement.  Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir.1996).  If the plaintiff demonstrates the existence of a protected liberty interest, the court is then to determine whether the deprivation of this interest "occurred without due process of law."  Id. at 351, citing Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989).  Due process generally requires that a state afford an individual "some kind of hearing" prior to depriving them of a liberty or property interest.  DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).  Although not dispositive, duration of disciplinary confinement is a significant factor in determining atypicality.  Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000); Blackshear v. Woodward, No. 13-CV-1165, 2014 WL 2967752 (N.D.N.Y. July 1, 2014).

McAllister suggests that his confinement in SHU for forty-two to fifty-two days is a sufficient deprivation that requires procedural protections.   Freedom from SHU confinement may give rise to due process protections; however, the plaintiff must allege that the deprivation imposed "an atypical and significant hardship."  Sandin, 515 U.S. at 484; Gaston v. Coughlin, 249 F.3d 156, 162 (2d Cir. 2001) (concluding that SHU confinement does not give rise to due process protections where inmate failed to demonstrate atypical hardship while confined).  Although the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the Sandin standard (Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999)), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections.  See e.g. Sims v. Artuz, 230 F.3d 14, 23 (2d

Cir. 2000) (holding confinement in SHU exceeding 305 days was atypical); Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir.1999) (concluding confinement for fewer than 101 days in SHU, plus unpleasant but not atypical conditions, insufficient to raise constitutional claim). Although the Second Circuit has generally held that confinement in SHU for 101 or fewer days without additional indicia of atypical conditions generally does not confer a liberty interest (Smart v. Goord, 441 F. Supp. 2d 631, 641 (2d Cir. 2006)), it has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of Sealey or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Palmer v. Richards, 364 F.3d 60, 65 (2d. Cir. 2004) (citing, inter alia, Ortiz, 323 F.3d at 195, n. 1).

The undersigned notes that it is unclear what portion of McAllister's relatively brief time in SHU is attributable to the Tier III determination, because it appears that McAllister was already in SHU when the instant disciplinary report was filed. Am. Comp. ¶ 5; Dkt. No. 74-3, Exh. A, at 14. The undersigned also notes that there is no indication that McAllister endured unusual SHU conditions. The only reference McAllister makes to his time in SHU is that, upon his transfer to SHU, several bags of his paperwork were confiscated pursuant to directive 4913. Id. ¶ 37. However, review of directive 4913 reveals that the personal and legal property limit set forth in directive 4913 applies to the general prison population and inmates in other forms of segregated confinement. Dkt. No. 49-2, at 5-19. Thus, the fact that McAllister was forced to comply with directive 4913 does not indicate that he was subjected to conditions more severe than the normal SHU conditions or conditions imposed on the general prison population. Dkt. No. 74-3, Exh. A, at 14.

18

Although the record is largely absent of detail of the conditions McAllister faced in SHU, there is also nothing in the record comparing the time McAllister was assigned and spent in disciplinary confinement with the deprivations endured by other prisoners "in the ordinary course of prison administration," which includes inmates in administrative segregation and the general prison population.  Welch v. Bartlett, 196 F.3d 389, 394 (2d Cir. 1999) (holding that, after Sandin, "the relevant comparison concerning duration is between the period of deprivation endured by the plaintiff and periods of comparable deprivation typically endured by other prisoners in the ordinary course of prison administration, including general population prisoners and those in various forms of administrative and protective custody").  Because "[t]he record does not reveal whether it is typical for inmates not being disciplined to spend similar periods of time in similar circumstances," Call's motion for summary judgment should be denied.  Id. at 394 (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997)).

Accordingly, it is recommended that defendant's motion for summary judgment on this ground be denied.

### b. **Procedural Due Process**

Assuming a liberty interest exists, it must be determined whether McAllister was denied due process at his Tier III hearing.  Where disciplinary hearings could result in SHU confinement or loss of good time credit, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (citing Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir.1999)); see also Wolff, 418

U.S. at 556; <u>Sira v. Morton</u>, 380 F.3d 57, 59 (2d Cir. 2004).

i. **Notice**

McAllister first appears to argue that he was denied procedural due process because the misbehavior report (1) violated unnamed DOCCS rules, regulations, and procedures, and (2) failed to provide him with adequate notice of the charges against him because it did not list the five inmates whose affidavits were confiscated and, thus, impacted his ability to prepare a defense to the charges. Am. Compl. ¶¶ 11-13, 16-17. Although inmates are entitled to advance written notice of the charges, "[t]his is not to suggest that the Constitution demands notice that painstakingly details all facts relevant to the date, place, and manner of charged inmate misconduct . . . ." <u>Sira</u>, 380 F.3d at 72 (2d Cir. 2004) (citing <u>Wolff</u>, 418 U.S. at 564). "[T]here must be sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." <u>Id.</u>

First, to the extent that McAllister's argues that the differing disciplinary reports violated unspecified DOCCS rules, regulations, and procedures (Am. Compl. ¶¶ 12-13), this claim must fail. A section 1983 claim is not the "appropriate forum" in which to seek review of a violation of a prison regulation. <u>Rivera v. Wohlrab</u>, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002)("a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulation or state law . . . the allegations asserted must constitute violations of constitutional due process standards."). Next, McAllister fails to plausibly allege the existence of a question of fact whether the difference between the misbehavior reports deprived him of the ability to identify relevant evidence so that he could prepare a defense. Although McAllister's copy of the report was missing the names of the inmates

20

whose affidavits were confiscated, it informed McAllister of the date, time, and location of the alleged violations; the rules alleged to have been violated; and a description of the documents that were confiscated. Johnson v. Goord, 305 Fed. Appx. 815, 817 (2d Cir. 2009) (concluding where the inmate's copy of misbehavior report included details of alleged violation and charges against him, a sentence missing from the inmate's copy of report did not violate the inmate's due process rights). It is clear that the discrepancy between the misbehavior reports did not affect McAllister's ability to prepare and present a defense. Prior to the hearing, McAllister requested as witnesses the five inmates whose affidavits were found during the property search. Indeed, the record demonstrates that McAllister was able to both identify the documents referenced in the misbehavior report and address them at the hearing. Dkt. No. 74-3, Exh. A at 45, 47-48.

Thus, because he received sufficient notice of the charges against him and was able to prepare and present a defense on his behalf, McAllister fails to raise a question of fact as to whether he was denied sufficient notice of the charges against him.


ii. **Hearing Officer Bias/Pre-determination of Guilt**

McAllister also contends that his procedural due process rights were violated because Call was biased against him and prejudged his guilt. The Fourteenth Amendment guarantees inmates the right to the appointment of an unbiased hearing officer to address a disciplinary charge. Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). An impartial hearing officer "does not prejudge the evidence" and is not to say "how he would assess evidence he has not yet seen." Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir.1990); see also Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for

prison officials to decide the disposition of a case before it was heard"). However, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Russell v. Selsky, 35 F.3d 55, 60 (2d Cir.1996). "A hearing officer may satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the hearing." Nelson v. Plumley, No. 9:12–CV–422, 2014 WL 4659327, at *11 (N.D.N.Y. Sept. 17, 2014) (quoting Allred v. Knowles, No. 06-CV-0456, 2010 WL 3911414, at * 5 (W.D.N.Y. Oct. 5, 2010) (quoting Waldpole v. Hill, 472 U.S. 445, 455 (1985)). However, "the mere existence of 'some evidence' in the record to support a disciplinary determination does not resolve a prisoner's claim that he was denied due process by the presence of a biased hearing officer." See Smith v. United States, No. 09–CV–729, 2012 WL 4491538 at *8 (N.D.N.Y. July 5, 2012).

Prison officials serving as hearing officers "enjoy a rebuttable presumption that they are unbiased." Allen, 100 F.3d at 259. "Claims of a hearing officer bias are common in [inmate section] 1983 claims, and where they are based on purely conclusory allegations, they are routinely dismissed." Washington v. Afify, 968 F.Supp. 2d 532, 541 (W.D.N.Y. 2003) (citing cases). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." Johnson v. Fernandez, No. 09-CV-626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing Francis, 891 F.2d at 46).

McAllister first argues that Call prejudged his guilt. He supports this contention by pointing to moments during the Tier III hearing where Call expressed his belief that McAllister's possession of affidavits signed by other inmates was sufficient to support a violation of prison rules 113.15 and 180.17. Am. Compl., ¶¶ 13, 15, 23-25, 36. Here,

22

however the challenged affidavits were not evidence that Call prejudged because he had the opportunity to review the affidavits and did so at the hearing.  Although McAllister disagreed with Call's opinion that possession of such documents would be a <u>per se</u> violation of the rules, Call's assertion of belief in this matter was an opinion he reached following his personal review of this evidence.  <u>See</u> <u>Johnson v. Doling</u>, No. 05-CV-376, 2007 WL 3046701, at * 10 (N.D.N.Y. Oct. 17, 2007) (holding that where the "[p]laintiff was provided the opportunity to testify, [and] call and question witnesses . . . . [d]isagreement with rulings made by a hearing officer does not constitute bias").  Thus, it does not appear that Call prejudged this evidence.

To support his claim that Call exhibited bias and partiality against him in the Tier III hearing, McAllister points out that, after he objected to the misbehavior report for failing to provide him sufficient notice of the documents confiscated, Call read the portion of the misbehavior report describing the documents as "[a]rticles of paper which appear to be legal work including some signed affidavits," and stated "that didn't ring a bell for you?" <u>Id.</u> ¶¶ 19, 32).  When read in context, this statement does not establish bias on Call's part, rather it appears to be a genuine question.  Though it may be said that Call could have couched this question in a kinder manner, this statement does not demonstrate bias. Moreover, that the Tier III determination was reversed on appeal, without more, is not evidence of bias or other due process violation.  <u>Eng v. Therrien</u>, No. 04-CV-1146, 2008 WL 141794, at *2 (N.D.N.Y. Jan. 11, 2008).

Thus, McAllister fails to plausibly allege the existence of question of fact whether Call prejudged his guilt or was otherwise biased in the Tier III hearing.

### iii. **Failure to Investigate**

McAllister next suggests that he was denied procedural due process because Call declined to interview the law library officer. Am. Compl. ¶ 29. Call permitted McAllister to present testimony on his behalf and afforded him the opportunity call witnesses. Had McAllister wished to hear testimony from the law library officer, he could have requested the law library officer as a witness. <u>Wolff</u>, 418 U.S. at 566 (inmates have a right to call witnesses in their defense at disciplinary hearings). That Call found it unnecessary to independently interview the law library officer – especially where McAllister did not demonstrate that his testimony would be relevant – does not result in a denial of due process because "[t]here is no requirement . . . that a hearing officer assigned to preside over a disciplinary hearing conduct an independent investigation; that is simply not the role of a hearing officer." <u>Robinson v Brown</u>, No. 9:11–CV–0758, 2012 WL 6799725, *5 (N.D.N.Y. Nov. 1, 2012).

Accordingly, McAllister fails plausibly raise a due process violation based on Call's alleged failure to investigate.

### iv. **Confidential Witness**

To the extent it can be discerned, McAllister contends that he was denied due process because Call relied on confidential witness testimony, yet failed to provide him with advance notice of the confidential witness and refused to inform him of his or her identity or the nature of the testimony. Am. Compl. ¶¶ 30-34. The Second Circuit has held that a hearing officer must perform an independent assessment of a confidential informant's credibility for such testimony to be considered reliable evidence of an inmate's guilt. <u>Sira</u>, 380 F.3d at 78 (noting that, "when sound discretion forecloses confrontation and cross-examination, the

24

need for the hearing officer to conduct an independent assessment of informant credibility to ensure fairness to the accused inmate is heightened.").

Here, the record provides no indication that Call independently assessed the credibility and reliability of the confidential witness. The confidential witness form merely states that Call "was provided confidential information relating to the misbehavior report." Dkt. No. 74-3, at 13. Similarly, Call does not provide whether or how he performed an assessment of the witness's credibility. Id. at 4. Therefore, there exist questions of fact whether Call deprived McAllister of due process by relying on this testimony without an independent assessment of the witness's credibility.

To the extent that McAllister argues that he was denied due process by Call's decision to refuse to disclose the content of the confidential witness's testimony, the law in this circuit provides that where a prison official decides to keep certain witness testimony confidential, he or she "must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action." Sira, 380 F.3d at 75 (citing Ponte v. Real, 471 U.S. 491, 498 (1985)). Although "[c]ourts will not readily second guess the judgment of prison officials with respect to such matters . . . the discretion to withhold evidence is not unreviewable . . . ." Id. (citations omitted). Here, Call failed to provide his rationale for refraining to share the substance of this testimony, stating merely that McAllister could not be told the substance of the testimony because "it is by definition it is . . . confidential." Dkt. No. 74-3, at 74. As Call presented no reason to justify withholding the identity or substance of the confidential witness's testimony, McAllister presents a viable due process claim based on the nondisclosure of this evidence. Sira, 380 F.3d at 76.

Accordingly, Call's motion for summary judgment should be denied on this ground.

25

v. **Some Evidence**

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986) (citations omitted). In considering whether a disciplinary determination is supported by some evidence of guilt, "the relevant question is whether there is any evidence in the record [before the disciplinary board] that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (citations omitted); Sira, 380 F.3d at 69. The Second Circuit has interpreted the "some evidence" standard to require "reliable evidence" of guilt. Luna, 356 F.3d at 488.

In making his determination, Call relied upon McAllister's testimony and statements, testimony of a confidential witness, the misbehavior report, and the legal documents confiscated during the property search. Dkt. No. 74-3, at 4. As noted, based on the record provided, Call did not perform an independent assessment of the witness's credibility. Thus, Call's reliance on confidential testimony would be insufficient to support a finding of guilt. Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001) (determining that reliance on confidential informant's testimony insufficient to provide "some evidence" of guilt where there was no independent examination of indicia relevant to informant's credibility). The remaining evidence relied upon – McAllister's testimony, the misbehavior report, and the affidavits – does not constitute some evidence of guilt, as required by the Due Process clause.

The affidavits alone do not constitute some evidence of guilt because mere possession of affidavits signed by other inmates would not violate prison rules 113.15 and 180.17 were

it true that these documents were McAllister's property and drafted solely for his benefit. Similarly, although a written misbehavior report may serve as some evidence of guilt, such is the case where the misbehavior report charges the plaintiff for behavior that the author of the misbehavior report personally witnessed. Creech v. Schoellkoph, 688 F.Supp. 2d 205, 214 (W.D.N.Y. 2010) (citations omitted) (misbehavior report drafted by officer who personally observed plaintiff possess and transfer pieces of sharpened metal to another inmate constituted some evidence of guilt). In this case, where a determination of guilt would appear to turn on knowledge of the ownership of the documents and an understanding of the circumstances under which the papers were drafted, a misbehavior report which merely states that papers appearing to be legal work signed by other inmates were found in McAllister's property, it does not establish a <u>per</u> <u>se</u> violation of rules 113.15 and 180.17. <u>See</u> <u>Hayes v. Coughlin</u>, No. 87 CIV. 7401, 1996 WL 453071 , at *3 (S.D.N.Y. Aug. 12, 1996) ("if a misbehavior report can serve as 'some evidence' for a hearing decision and thereby insulate a hearing from review, there would be little point in having a hearing"); <u>see</u> <u>also</u> <u>Williams v. Dubray</u>, No. 09–CV–1298, 2011 WL 3236681, at *4 (N.D.N.Y. July 13, 2011) (holding that there were questions of fact whether the determination was based upon some evidence of guilt where the hearing officer relied on misbehavior report that was based on a corrections officer's unsupported accounts, without additional evidence to support its charges). Thus, absent additional evidence that these papers belonged to other inmates or that McAllister drafted the documents for other inmates' use, the fact that the misbehavior report identified these documents as being found in McAllister's secured property does not constitute reliable evidence of guilt.

Finally, McAllister's testimony does not constitute reliable evidence of guilt. In response

to the charge of violating rule 113.15, McAllister testified that the affidavits were his property because he drafted them solely as evidence in his personal litigation against the Department of Probation. Similarly, in defense of the charge for violating rule 180.17, McAllister repeatedly testified that he did not provide legal assistance to the inmates in question because the affidavits were written solely to serve as supporting evidence in his personal action, the inmates were aware that they would receive no legal benefit as a result, and he did not receive any compensation from the inmates. Regardless whether Call considered McAllister's testimony to be credible, without some other reliable evidence, such as, perhaps, a statement from one of the other inmates claiming that he signed the affidavit under the belief that McAllister would provide him with legal assistance, McAllister's testimony denying violations of the charged prison rules would not constitute some evidence of guilt.

Accordingly, it is recommended that Call's motion for summary judgment be denied as to McAllister's procedural due process claim.

### c. **Directive 4913**

McAllister further argues that, as a result of the SHU placement, he suffered an unconstitutional deprivation of his legal and personal property because he was required to comply with the limits set forth in directive 4913. This Court has already ruled upon this claim when it was raised at earlier stages. In deciding Call's motion for summary judgment on the McAllister's first complaint, this Court held that the directive did not violate his Fourteenth Amendment rights:

> Directive # 4913 was reasonably related to valid institutional goals given DOCCS' responsibility to provide for the health and safety of its staff and inmates and the alternatives provided to inmates in

> being able to seek exceptions and choose which four or five draft
> bags of material would remain with them. Moreover, the rules were
> neutral and reasonably related to the ultimate goals of the facility,
> security and safety.

McAllister v. Fischer, 2012 WL 7681635, at *12 (N.D.N.Y. July 6, 2012) (Dkt. No. 55, at 22-23), Report and Recommendation adopted by 2013 WL 954961 (N.D.N.Y. Mar. 12, 2013) (Dkt. No. 58), appeal dismissed 2d Cir. 13-111 (Jan. 13. 2014). Further, the Court concluded that directive 4913 "did not violate[] McAllister's Fourteen Amendment rights" and was "reasonably related to valid institutional goals." Dkt. No. 55, at 23-24; Dkt. No. 58. Thus, any such claim is barred by the law of the case. Arizona v. California, 460 U.S. 605, 618 (1983) (citations omitted); see also United States v. Thorn, 446 F.3d 378, 383 (2d Cir. 2006) (internal quotation marks and citations omitted)("The law of the case doctrine counsels against revisiting our prior rulings in subsequent stages of the same case absent cogent and compelling reasons . . . .")); Arizona, 460 U.S. at 618 (citations omitted) ; Wright v. Cayan, 817 F.2d 999, 1002 n. 3 (2d Cir. 1987) (citations omitted) ("Even when cases are reassigned to a different judge, the law of the case dictates a general practice of refusing to reopen what has been decided.").

Accordingly, it is recommended that defendant's motion for summary judgment be granted on this ground.

### 2. **Equal Protection**

McAllister's only reference to an equal protection violation in the amended complaint is his conclusory claim that Call's reference to a confidential witness during the Tier III hearing was in violation of his right to equal protection. Am. Compl. ¶ 31. Further, in this Court's previous order, McAllister's equal protection claim was dismissed for failure to demonstrate,

among other things, that he was part of a protected class or that he was treated differently from any similarly-situated inmates.  Dkt. No. 58, at 4; Dkt. No. 55, at 24-25.  Thus, any such claim would also be barred by the law of the case.  Thorn, 446 F.3d at 383. Regardless, McAllister's equal protection claim must also fail for the reasons discussed infra.

To establish an equal protection violation, a plaintiff must show that "he was treated differently than others similarly situated as the result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  McAllister has not identified, nor does the record disclose, any basis for a reasonable fact-finder to conclude that he was treated differently from similarly-situated individuals.  Rather, plaintiff's only support for his equal protection claim is the following:

> Call, throughout the entire disciplinary hearing deprive [sic] plaintiff equal protection when he stated: "This is hearing officer Call, this is 2:21 as I was going through my paperwork I realized something that I wanted to point out to Mr. McAllister."
>
> Defendant Call discriminated against plaintiff when he stated: "I reviewed it this morning the 22nd when it was received again is confidential"

Am. Compl. ¶¶ 31-32.  McAllister does not explain how these statements denied him equal protection.  McAllister fails to plausibly suggest that he was treated differently from any similarly-situated individuals.  Further, even if these statements demonstrate the existence of questions of fact regarding whether McAllister was treated differently from similarly-situated persons, he fails to identify disparity in the conditions "as a result of any purposeful discrimination directed at an identifiable suspect class."  See Dolberry v. Jakob, No. 11–CV–1018, 2014 WL 1292225, at *12 (N.D.N.Y. Mar. 28, 2014).

Accordingly, it is recommended that defendant's motion on this ground should be

granted.

## G. **Qualified Immunity**

Call contends that, even if McAllister's claims are substantiated, he is entitled to qualified immunity. The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Luna, 356 F.3d at 490 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). This assessment is made "in light of the legal rules that were clearly established at the time it was taken." Wilson, 526 U.S. at 614; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." Phillips v. Wright, 553 Fed. Appx. 16, 17 (2d Cir. 2014) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)).

First, as discussed, McAllister presented a viable due process claim that the determination was not based on some evidence of guilt because Call (1) relied on confidential witness testimony without making an independent assessment of the witness's credibility and (2) did not otherwise have sufficient reliable evidence to support his finding

31

of guilt.  McAllister has also raised issues of fact whether the remaining evidence relied upon – the misbehavior report, McAllister's testimony and statements, and the confiscated legal papers – provided reliable evidence of guilt.

Addressing the second prong of the analysis, there is a clearly-established right to procedural due process protections, including the right to have a disciplinary determination be based on some evidence of guilt.  There is also a clearly-established right to an independent assessment of confidential witnesses performed where a hearing officer relies on the witness's testimony (Vasquez v. Coughlin, 726 F.Supp. 466, 472 (S.D.N.Y.1989) (right clearly established by 1986); see also Sira, 380 F.3d at 80).  Further, although there is no bright-line for what suffices as "some evidence" in every prison disciplinary proceeding (Woodard v. Shanley, 505 Fed. Appdx. 55, 57 (2d Cir. 2012)), there were questions of fact surrounding the allegedly reliable evidence demonstrating that McAllister was in possession of other inmates' legal documents or that he provided them with unauthorized legal assistance.  Cf. Turner v. Silver, 104 F.3d 354, at *3 (2d Cir. 1996) (some evidence to support determination that the defendant violated rule against unauthorized legal assistance where documentary evidence indicated the plaintiff received payment from other inmates, author of misbehavior report testified regarding an interview with informant who implicated defendant, prison official testified that inmate told her he had been charged for law library services and inmate testified the same).   Call both failed to perform an independent assessment of the confidential witness's credibility and provided no explanation for why both the identity of the witness and the substance of his or her testimony could not be disclosed to McAllister.  Sira, 380 F.3d at 75 (citing Ponte, 471 U.S. at 498).

Thus, given the state of the law regarding the rights to which an inmate is entitled in his disciplinary hearing, it was not objectively reasonable for Call to have believed that (1) he need not perform an independent assessment of the witness credibility or (2) the misbehavior report, confiscated affidavits, and McAllister's consistent testimony and statements, without more, sufficiently supported a determination that McAllister violated rules 113.15 and 180.17.

Accordingly, defendant's motion for summary judgment should be denied on this ground.

## IV. **Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 74) be

1. **GRANTED** insofar as:

    a.  dismissing plaintiff's First Amendment claims;

    b.  dismissing plaintiff's Eighth Amendment claims;

    c. dismissing plaintiff's challenge to the constitutionality of Directive 4913;

    d.  defendant's Eleventh Amendment immunity defense;

2. **DENIED** as to:

    a.  plaintiff's Fourteenth Amendment procedural due process claims;

    b.  defendant's qualified immunity defense.


Pursuant to 28 U.S.C. § 636 (b) (1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c)

(citing 28 U.S.C. § 636 (b) (1) (B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993);

Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P.

72, 6 (a), 6 (e).

Dated: October 9, 2014
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge